**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ABEL M. C.,

Plaintiff,

v. Civ. No. 25-752 GBW

FRANK BISIGNANO,
*Commissioner of the Social Security Administration*,

Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Memorandum Pursuant to Supplemental Rule 6 For Social Security Actions Under 42 U.S.C. § 405(g) ("the Motion to Remand"). *Doc. 15*. Plaintiff asks the Court to vacate and remand the Social Security Agency ("SSA") decision to deny Plaintiff Supplemental Security Income ("SSI"). *Id.* For the reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of the SSA.

### I. PROCEDURAL HISTORY

Plaintiff filed an initial application for SSI on April 14, 2021, alleging disability beginning October 19, 2020. Administrative Record ("AR") at 86. Plaintiff's application was denied on initial review on November 4, 2022, and again on reconsideration on September 25, 2023. AR at 124-27, 135-37. On August 20, 2024, a hearing was held by

an Administrative Law Judge ("ALJ"). AR at 63-84. The ALJ issued an unfavorable decision on October 15, 2024. AR at 41. The Appeals Council denied review on June 25, 2025, making the ALJ's decision the final decision of the Commissioner. AR at 1. On August 7, 2025, Plaintiff filed suit in this Court. *Doc. 1.*

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III. ALJ EVALUATION

### A. Legal Standard

For purposes of Supplemental Security Income, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 416.920. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to

perform his "past relevant work." *Id.* § 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 416.920(e). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 416.945. Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**B. <u>The ALJ's Decision</u>**

On October 15, 2024, the ALJ issued a decision denying Plaintiff's application for SSI benefits. *See* AR at 26-41. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 14, 2021, the application date. AR at 28.

At step two, the ALJ found Plaintiff had the following severe impairments: obesity, a mental impairment variously assessed as generalized anxiety disorder, panic disorder with agoraphobia, major depressive disorder, and attention deficit hyperactivity disorder (ADHD). AR at 28. The ALJ found that Plaintiff's hypertension and hypokalemia were not severe. AR at 29. She further determined that Plaintiff's lower back pain, knee pain, and fibromyalgia were not medically determinable impairments. AR at 29.

At step three, the ALJ found that Plaintiff's impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. AR at 30-32. She determined that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR at 30-31. However, the ALJ determined that these limitations did not satisfy the Paragraph B criteria for a finding of disability under Listings 12.00, nor did they satisfy the

Paragraph C criteria because "the evidence did not sufficiently show the claimant had a minimal capacity to adapt to changes in his environment or demands not already a part of his daily life." AR at 31.

At step four, the ALJ found Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 416.967(c) except the claimant can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. The Claimant can frequently kneel, crouch, crawl, stoop, and balance, as defined by the *Selected Characteristics of Occupations (SCO).* The claimant can understand, remember, and maintain attention and concentration to carry out simple instructions in two-hour increments with normal breaks in the workday. The claimant can have no interaction with the general public, occasional interaction with coworkers with no teamwork related tasks, and occasional interaction with supervisors. The claimant can use judgment to make simple work-related decisions. Lastly, the claimant can deal with occasional changes in a routine work setting.

AR at 32. In making this finding, she concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. AR at 33. However, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR at 33; *see also* AR at 35 ("[T]he claimant's statements about the intensity, persistence, and limiting effects of his symptoms appeared inconsistent because the claimant's mental and physical impairments appeared stable."). She found the medical opinions of Dr. Manhal Wieland, Dr. Mark A. Werner, Dr. K. P. Morris, and FNP Susan Giron persuasive. AR at 37-38. She considered the opinions of Dr. Helene

Malabed and Dr. Em Ward unpersuasive due to their lack of support in the medical records and their inconsistencies with the opinion of FNP Susan Giron. AR at 38. Finally, the ALJ considered statements by LMHC Shannon Delarosbil, LMSW Jessica Benavidez, and Plaintiff's mother, Maria Smith, however she did not find them persuasive because they either did not constitute medical opinions or constituted statements on issues reserved to the Commissioner. AR at 38-39.

At step five, the ALJ considered Plaintiff's age, education, lack of work experience, and RFC and determined that he could perform jobs that exist in significant numbers in the national economy. AR at 39-41. Specifically, the ALJ found that Plaintiff could perform the requirements of three representative occupations: (1) laundry aide (DOT 323.687-010), (2) transportation cleaner (DOT 919.687-014), and (3) hand packer (DOT 920.587-018). AR at 40. Accordingly, the ALJ concluded that Plaintiff was not disabled from April 14, 2021, through the date of the decision. AR at 41.

## IV. Parties' Positions

Plaintiff asserts that the ALJ erred by failing to account for Plaintiff's need for an emotional support animal ("ESA"). *Doc. 15.* Specifically, Plaintiff alleges that the ALJ's decision was not supported by substantial evidence because where an ESA is shown to be medically necessary, an ALJ should address it when calculating the RFC. *Id*. at 9.

Defendant responds that the ALJ's decision should be affirmed, because (1) there is no provision of the Social Security Act, agency regulations, or Tenth Circuit case law that requires an ALJ to address a purported need for an ESA in assessing workplace functioning and (2) Plaintiff did not establish that an ESA was medically necessary. *Doc. 24*.

## V. ANALYSIS

### A. <u>The ALJ Was Not Required to Evaluate Plaintiff's Alleged Need for an ESA When Formulating the RFC</u>

Plaintiff cites no controlling law, and indeed the Court can find none, that expressly requires an ALJ to discuss a claimant's alleged need for an ESA in the RFC assessment. *See doc. 15*. Instead, he cites case law mainly from outside the Tenth Circuit to support the assertion that an ALJ must discuss a claimant's need for an ESA when there is evidence that the ESA is "medically necessary." *Id.* at 9, 12; *see also W.D. v. Dudek*, 2025 WL 947533, at *6 (D. Colo. Mar. 28, 2025) (collecting cases).[1] In doing so, Plaintiff likens an ESA to an "assistive device" such as a cane or a walker. *Doc. 15* at 9;

[1] The Court notes that in *W.D. v. Dudek*, the parties *agreed* that an ESA being "medically necessary" was the proper standard for requiring discussion. 2025 WL 947533, at *6 n.9 (D. Colo. Mar. 28, 2025). That is not the case here. *See doc. 24* at 4. Further, the Court in *W.D.* noted that several other courts had entertained the notion that an ESA could be considered an accommodation, and the ALJ would therefore *not be permitted* to consider it when constructing an RFC. 2025 WL 947533, at *6 n.8; *see also* SSR 11-2p, 2011 WL 4055665, at *9 ("When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations, even if an employer would be required to provide reasonable accommodations under the [ADA].").

*doc. 25* at 2.

In her decision, the ALJ stated that she would "not make findings about a person's need for a service animal[2] in the workplace, which is an issue governed by the Americans with Disability [*sic*] Act (ADA) and addressed by the person and employer on a case-by-case basis in the employment setting." AR at 36. Plaintiff attacks this argument by saying that "[u]nder SSR 96-9P, like a cane or walker…[an] ALJ must consider the evidence establishing the medical necessity for an ESA." *Doc. 25* at 2.

There seems to be uncertainty amongst the courts regarding whether to use the "medical necessity" standard when evaluating a service animal or ESA, or to consider it an "accommodation." *See, e.g., Shue v. O'Malley*, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024) ("We note that the medical necessity test, as adopted by the district court below, appears to be in tension with the requirement that the RFC be 'based on all the relevant medical *and other evidence* found in the record'…Nonetheless, we need not resolve whether the medical necessity test, is in fact, the appropriate test.") (citation omitted) (emphasis in original). If an ESA or service animal were considered an

[2] The ALJ seems to have used the terms "emotional support animal" and "service animal" interchangeably. *See* AR at 36, 82-83. Many of the cases cited by Plaintiff to support his arguments regarding the inclusion of his ESA in his RFC refer to "service animal[s]." *See doc. 15* at 12. The Court notes, however, that Department of Justice ("DOJ") definitions explicitly differentiate between work performed by a service animal and work performed by an emotional support animal. *See* 28 C.F.R. § 36.104 (stating that a "service animal" is "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability," while "the provision of emotional support, well-being, comfort, or companionship does *not* constitute work or tasks") (emphasis added).

"accommodation," then the Commissioner would not be permitted to consider them when calculating a claimant's RFC. SSR 00-1c, 2000 WL 38896, at *5 ("[W]hen the SSA determines whether an individual is disabled…it does not take the possibility of 'reasonable accommodation' into account[.]"); SSR 11-2p, 2011 WL 4055665, at *9 ("When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations[.]"). The Court here is more persuaded by the argument that an ESA should be considered an accommodation rather than an "assistive device," but that issue need not be resolved today.

**1. The ALJ Properly Evaluated Plaintiff's RFC Without the ESA**

Even if the Court agreed that the "medically necessary" standard should be applied to Plaintiff's ESA, a remand is not warranted because the ALJ assessed Plaintiff's RFC based on evidence of Plaintiff's *maximum* capacity *without* the aid of his ESA. *See* AR at 36 ("[T]he residual functional capacity assessment finding is an assessment of the claimant's ability to perform work-related activities without the animal present."). As previously noted, a claimant's RFC is "what an individual can still do despite his or her functional limitations and restrictions caused by his or her medically determinable physical or mental impairments." SSR 96-9p, 1996 WL 374185, at *1. An RFC "does not represent the *least* an individual can do despite his or her

limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original); *see also* 20 C.F.R. § 416.945(a)(1).

The ALJ considered Plaintiff's use of his ESA and calculated the most that Plaintiff could do *without* the presence of his dog. *See* AR at 36 ("I considered the claimant's allegations concerning the need for a support animal[.]"). The ALJ then included significant social limitations to address his mental limitations. *See* AR at 32 ("The claimant can have no interaction with the general public, occasional interaction with coworkers with no teamwork related tasks, and occasional interaction with supervisors."). Because the RFC was calculated without the benefit of an ESA, having the dog at a job would logically bring Plaintiff's actual capacity above his RFC and make it easier for him to work because the ESA would support his emotional/mental health and "enhance his day-to-day functionality." AR at 687.

To be sure, the presence of the ESA may make it harder for Plaintiff to be hired for a particular job. Indeed, as noted by the Vocational Expert, requiring the presence of his ESA would likely "preclude competitive employment." *See* AR at 82. However, *employability* is not a physical or mental limitation considered when constructing an RFC. *See* AR at 82 ("[I]f the hypothetical individual would require the assistance of an emotional support animal at work, how would that affect their employability?"). Indeed, an individual is disabled only when he cannot engage in any "substantial

gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or *whether he would be hired if he applied for work*." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (emphasis added); *see also* SSR 11-2p, 2011 WL 4055665, at *9.

Accordingly, the Court finds that the ALJ properly considered the evidence in the record when crafting the RFC and that that the RFC reasonably accounts for Plaintiff's limitations. The ALJ appropriately followed all the required legal standards, and her findings are supported by substantial evidence. The judgment of the SSA should therefore be affirmed.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand (*doc. 15*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**